Teresa G. SUSSMAN, f/k/a Teresa M. Gaffney, Plaintiff,

v.

SALEM, SAXON AND NIELSEN, P.A., Bernice Saxon, Richard Salem, and Richard A. Nielsen, Defendants.

No. 91–776–CIV–T–17C.

United States District Court, M.D. Florida, Tampa Division.

May 29, 1992.

Neil Harvey Chonin, Chonin & Sher, P.A., Coral Gables, Fla., for plaintiff.

Thomas M. Gonzalez, Mark A. Hanley, Thompson, Sizemore & Gonzalez, Tampa, Fla., for defendants.

## ORDER ON MOTIONS

KOVACHEVICH, District Judge.

This cause is before the Court on Defendants' motion to strike, filed on July 15, 1991, Plaintiff's request for punitive damages and a jury trial pursuant to *Florida Statutes* § 768.72, and in the alternative compensatory damages under Title VII of the Civil Rights Act of 1991, (42 U.S.C. § 2000e, *et seq.*); Plaintiff's motion to amend her complaint, filed on February 5, 1992, in order to seek compensatory and punitive damages and a jury trial, pursuant to 42 U.S.C. § 2000e, *et seq.*

## FACTS

In this action, Plaintiff alleges that certain actions of Defendant subjected Plaintiff to a hostile working environment and discrimination on account of her pregnancy, steadily increasing in intensity and culminating in her discharge. Plaintiff further alleges that the conduct of Defendant was done with malice or with reckless indifference to the federally protected rights of the Plaintiff. Plaintiff also alleges that as a result of Defendant's discriminatory actions and termination, she suffered the loss of salary and fringe benefits.

## DISCUSSION

During the pendency of this case, Congress passed, and the President signed into law, the Civil Rights Act of 1991 (Public Laws 102–166, Nov. 21, 1991). Section 102 of the Civil Rights Act of 1991 allows a plaintiff bringing a charge of intentional discrimination, made unlawful under the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e–2, or 2000e–3), to recover compensatory and punitive damages. Additionally, Section 102 of the Civil Rights Act of 1991 entitles a plaintiff seeking an award of compensatory or punitive damages to

trial by jury. The statute, however, makes no provision for retroactivity.

Plaintiff contends that the Civil Rights Act of 1991 is retroactive in application. Some courts have ruled that retroactive application is not appropriate. *See, e.g., High v. Broadway Industries,* W.D.Mo., No. 90–10066–Cv–W–3, 1992 WL 33860, Jan. 7, 1992; *Hansel v. Public Service Co. of Colorado,* 778 F.Supp. 1126 (D.Colo. 1991); *James v. American Int'l Recovery, Inc.,* 1991 WL 281734 (N.D.Ga.Dec. 3, 1991), while several other jurisdictions have held that the statute should be applied to pending lawsuits. *See Stender v. Lucky Stores Inc.,* 780 F.Supp. 1302 (N.D.Cal. 1992); *King v. Shelby Medical Center,* 779 F.Supp. 157 (N.D.Ala.1991); *Davis v. Tri–State Mack Distributions, Inc.,* E.Ark., No. LR–C–89–912, 1991 WL 316891 (Dec. 16, 1991).

There are two lines of precedent dealing with the retroactive application of congressional enactments. The Supreme Court in *Bradley v. School Board of Richmond,* 416 U.S. 696, 711–14, 94 S.Ct. 2006, 2016–17, 40 L.Ed.2d 476 (1974), held that "a court is to apply the law in effect at the time it renders its decision, unless doing so will result in manifest injustice or there is a statutory direction of legislative history to the contrary." In *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), however, the Supreme Court directly contradicted its decision in *Bradley* and held that: "Retroactivity is not favored by law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless the language requires this result."

Although the Supreme Court has not resolved the conflicting viewpoints on retroactivity, the Eleventh Circuit has relied upon the *Bradley* analysis to determine retroactive application of the statutes. *See Federal Deposit Ins. Corp. v. 232, Inc.,* 920 F.2d 815, 818 n. 4 (11th Cir.1991). In *United States v. Peppertree Apartments,* 942 F.2d 1555, 1561 n. 3 (11th Cir.1991), the Eleventh Circuit reemphasized its reliance on *Bradley,* writing: "Thus, unless otherwise directed by the United States Supreme Court or the Eleventh Circuit *en banc,* we

are bound by precedent to apply the *Bradley* analysis." Furthermore, the Eleventh Circuit has generally adhered to the proposition that a new statute should apply to cases pending on the date of its enactment. *See United States v. Kolter*, 849 F.2d 541, 543 (11th Cir.1988); *United States v. Marengo County Commission*, 731 F.2d 1546, 1533 (11th Cir.1984) (statute assumed to apply to cases pending at the time of its passage unless there is a 'clear indication' that it is not to apply).

The *Bradley* Court recognized two exceptions to its rule of construction: the presumption does not govern where (1) there is clear congressional intent to the contrary, or (2) retroactive application would result in "manifest injustice". *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016.

First, there is no clear congressional intent that the Civil Rights Act of 1991, with regard to compensatory and punitive damages, is meant only to apply prospectively. *Civil Rights Act of 1991*, Pub.L. 102–166, 105 Stat. 1072 (1991). Section 402(a) of the statute provides "except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." Congress, however, specifically provided that Title VII would *not* be applied retroactively to overseas employment in § 109(c) and to disparate impact discrimination cases in § 402(b). Therefore, since Congress is silent as to other provisions, ie., damages, it must be read in accordance with the plain language of the Act—that where it is not specifically provided, the Act shall take effect upon enactment and be applied retroactively. If Congress had intended to forbid retroactive application to the entire Act, it would have clearly stated its intention.

Having concluded that the Act evidences no clear congressional intent contrary to retroactivity, the next factor to consider is whether such an application to pending cases would amount to manifest injustice. In determining whether or not an injustice might be worked upon a party, the analysis should center on (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in the law upon those rights. *Id* at 717, 94 S.Ct. at 2019.

"The nature of the parties" must first be considered. Although the present case involves private parties, the purpose of the Act of 1991, is to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace. This case should not be viewed as parties engaged in a routine private lawsuit; rather, this case, raises a matter of great national concern—remedying intentional discrimination. The Court in *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801), held that "in great national concerns—the court must decide according to existing laws." This factor weighs in favor of retroactivity.

The second prong, focusing on "the nature of the parties rights" must next be considered. Retroactive application is manifestly unjust if it "would infringe upon or deprive a person of a right that has matured or become unconditional." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020. The Eleventh Circuit has held that statutory changes which are "remedial" or "procedural" in nature apply retroactively, while those that render "substantive" changes apply prospectively. *Lussier v. Dugger*, 904 F.2d 661, 665 (11th Cir.1990). The section of the Act of 1991, allowing for the recovery of compensatory and punitive damages, is clearly remedial. *See United States v. Peppertree Apartments*, 942 F.2d 1555 (11th Cir.1991) (retroactive application of statute allowing party to collect double damages not manifestly unjust). Additionally, the distinction between trial by jury or trial by the court is one of procedure. *See King v. Shelby Medical Center, supra,* (jury trial should be allowed in Title VII case under the new provisions of the 1991 Act). Because section 102 does not affect substantive rights, its retroactive application does not infringe upon matured rights.

The third factor requires analysis of the "impact of the change in law upon existing rights". The facts of this case do not support a finding of whether a new and unanticipated obligation would be imposed upon a party because the Defendant has no "matured" or "vested" right in the previously existing remedial scheme of Title VII. Retroactive application of section 102 would not impose an additional obligation

on the Defendant, but merely supplement remedies available to the Plaintiff.

By including two provisions in the Civil Rights Act of 1991, which limit retroactive application of the Act regarding specific provisions, Congress made clear its intention that under all other provisions, the Act should apply to pending cases irrespective of the fact that the conduct giving rise to the complaint of discrimination took place prior to the enactment of the Act. This Court holds and case law supports that absent an intent to the contrary, a statute will be assumed to apply to cases pending at the time of its enactment and that no manifest injustice would result from a retroactive application of the Act.

ORDERED that the motion to strike be denied and the motion to amend complaint be granted, and Plaintiff shall have ten (10) days from the date of this order to file the amended complaint. The amended complaint must comply with this Court's Rule 4.01, United States District Court, Middle District of Florida regarding the amending of the complaint. Failure to comply with this order will result in dismissal for failure to prosecute.

DONE and ORDERED.